**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-12551

————————————

PATRICK HEARNS, JR.,
DANEL PHILLIPS,
ERNESTO DIMITRIE,
CRAIG TONGHINI,
BONNIE DOS SANTOS, et al.,

*Plaintiffs-Appellants,*

*versus*

MEJ PLUMBING, LLC,
JASON COHEN,
ERIC LAZAR,
JOHN VALENZA,

*Defendants-Appellees.*

2                          Opinion of the Court                    24-12551

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:24-cv-60434-WPD

_____

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Patrick Hearns, Jr., Danel Phillips, Ernesto Demeritte,[1] Craig Tonghini, and Bonnie Dos Santos appeal the district court's grant of summary judgment to their employer, Defendants-Appellees MEJ Plumbing, LLC, and its officers Jason Cohen, Eric Lazar, and John Valenza on their claim for unpaid minimum wages and overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. On appeal, Appellants argue that the district court erred by holding that they failed to establish individual coverage. Appellants also argue that the district court erred in denying their motion for reconsideration.

After careful review, we reverse the district court's grant of summary judgment to Defendants and remand for further proceedings consistent with this opinion.

## I.    BACKGROUND

Because we are reviewing an order on a motion for summary judgment, we recite the record evidence in the light most

_____

[1] Earlier documents in this case have erroneously referred to Ernesto Demeritte as "Ernesto Dimitrie" as the result of a scrivener's error.

favorable to Plaintiffs, the non-moving party, and draw all reasonable inferences in their favor. *Rosado v. Sec'y, Dep't of the Navy*, 127 F.4th 959, 964 (11th Cir. 2025).

In 2022, Plaintiffs worked for MEJ Plumbing, LLC, in Florida until the business closed that same year. Dos Santos was an "office worker." For their parts, Hearns, Phillips, and Tonghini worked as plumbers, and Demeritte served as a plumber's helper. Because similar facts apply to Hearns, Phillips, Tonghini, and Demeritte, we refer in this opinion to the four of them as the "Plumbers."

Plaintiffs' manager, Cohen, lived in New York. But to manage Plaintiffs, he communicated from New York with them daily by telephone, email, and text message. In these communications, Cohen discussed billing, scheduling, logistics, technical details, and conflict resolution. Plaintiffs characterize Cohen as "an active and 'hands-on' manager of MEJ in Florida while living in New York."

While Cohen lived and worked from New York, the Plumbers performed all their plumbing services in Florida. Still, they did plumbing work for facilities-management companies located outside Florida who had clients—including some nationwide companies like Wal-Mart, Tesla, and Walgreens—that were in Florida. These facilities-management companies were located in New York and Georgia. And on average, Hearns worked three to five jobs per week for these clients. The remaining Plumbers, Phillips, Demeritte, and Tonghini, attested that they completed plumbing jobs for the facilities management companies "regularly."

When the Plumbers performed work for the out-of-state facilities-management companies, they were "required to communicate with employees of the companies in New York and Georgia and report to them for each service call [they] attended."

As for Dos Santos, the "office worker," she did not attest that she had any direct communication with the facilities-management companies. Instead, she said, she went through Cohen. More specifically, she provided onboarding services to MEJ personnel, instructing them on how to navigate the company's internal operating systems. Dos Santos also taught Cohen and Lazar MEJ's business systems, and "[a]ny time there was a problem or issue, Cohen or Lazar would call [her]."

In 2024, Plaintiffs sued for violations of the FLSA. They alleged that Defendants failed to pay them minimum wages and overtime pay. The district court granted summary judgment to Defendants because it found that Plaintiffs were not covered by the FLSA under either individual or enterprise coverage. Plaintiffs filed a motion for reconsideration, which the district court denied. Now Plaintiffs appeal.

## II. STANDARDS OF REVIEW

We review de novo an order granting summary judgment. *McKay* v. *Miami-Dade County,* 36 F.4th 1128, 1132 (11th Cir. 2022). Summary judgment is proper when the record allows for no genuine dispute of material fact, and the law entitles the movant to judgment. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if the evidence would allow a reasonable jury to find for the non-

24-12551                Opinion of the Court                5

moving party. *Ireland* v. *Prummell,* 53 F.4th 1274, 1286 (11th Cir. 2022) (internal quotation marks omitted and alteration adopted). In considering an order granting summary judgment, we construe the evidence and draw all reasonable inferences "in the light most favorable to the nonmoving party." *Feliciano* v. *City of Miami Beach,* 707 F.3d 1244, 1252 (11th Cir. 2013) (alteration adopted).

We review a denial of a motion for reconsideration under an abuse-of-discretion standard. *Guevara v. Lafise Corp.,* 127 F.4th 824, 829 (11th Cir. 2025). But to the extent an order on a motion for reconsideration turns on a question of law, we review that issue de novo. *Id.* "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Id.* (quoting *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1309 (11th Cir. 2001)).

## III.    DISCUSSION

The FLSA mandates an employer to pay overtime pay and minimum wage to a covered employee "who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . ." 29 U.S.C. § 207(a)(1). The text of the FLSA provides two ways for employees to show that the FLSA covers them. *Id.* First, employees can show "individual coverage" if they are "engaged in commerce or in the production of goods for commerce." *St. Elien v. All Cnty. Env't Servs., Inc.,* 991 F.3d 1197, 1198 (11th Cir. 2021); *see also* 29 U.S.C. § 207(a)(1) (requiring time-and-a-half for employees "engaged in

commerce or in the production of goods for commerce"). Second, employees can show "enterprise coverage" if they are "employed in an enterprise engaged in commerce or in the production of goods for commerce." *St. Elien*, 991 F.3d at 1198; 29 U.S.C. § 207(a)(2).

On appeal, Plaintiffs claim only "individual coverage." They argue that they qualify because they were "engaged in commerce" under the FLSA. *See* 29 U.S.C. §§ 206(a), 207(a).

The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Construing this definition, the Supreme Court has said that an employee is "engaged in commerce" when he or she is "actually in or so closely related to the movement of the commerce as to be part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943).

As relevant here, we have further explained that employees are "engaged in commerce" if they "directly participat[e] in the actual movement of persons or things in interstate commerce by . . . regularly using the instrumentalities of interstate commerce in [their] work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs.*, Inc., 448 F.3d 1264, 1266 (11th Cir. 2006).

And more recently, we have clarified that, in *Thorne*, we meant that "one who . . . 'regularly us[es] the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel' **is** one who

'directly participat[es] in the actual movement of persons or things in interstate commerce." *St. Elien*, 991 F.3d at 1200 (quoting *Thorne*, 448 F.3d at 1266). We explained that this answer is consistent with the FLSA's plain-text definition of "commerce." *Id.* at 1199. We also showed that the rest of *Thorne* supports this interpretation. *See id.* at 1200.

In *St. Elien*, we applied this definition of "commerce" to determine that a reasonable jury could find an employee who called out-of-state customers and vendors three to five times each week "engaged in commerce" under the FLSA. *Id.* at 1198. After all, those contacts met the FLSA's definition of "commerce" because they were "communication[s] . . . between any State and any place outside thereof." *Id.* at 1199; *see* 29 U.S.C. § 203(b).

*St. Elien* requires the conclusion that Plaintiffs have raised a material issue of fact over whether they enjoy individual coverage under the FLSA. In *St. Elien*, the plaintiff called out-of-state customers and vendors three to five times a week. Here, Hearns has alleged that he communicated with out-of-state customers three to five times each week. The rest of the Plumbers said that they communicated with out-of-state customers "regularly" in the course of their duties. Plus, all Plaintiffs asserted that they regularly communicated by telephone with Cohen, who was in New York at the time. Based on these interstate communications in the regular course of Plaintiffs' duties, we must conclude that Plaintiffs alleged that they "engage[d] in commerce" under the FLSA's plain text.

*Thorne* doesn't change our analysis.  There, the plaintiff did mold- and water-damage restoration work for residential and commercial properties in Florida.  448 F.3d at 1265.  Two to three times each week, he used his employer's credit card to buy gas for his employer's truck, and two to three times each week, he used his employer's Home Depot credit card to buy goods and materials as part of his employment.  *Id.*  Other than that, the plaintiff offered no evidence that he "engaged in commerce" under the FLSA.  *See id.*  So we determined that the *Thorne* plaintiff did not "engage in commerce."  *See id.* at 1266–68.

But the *Thorne* plaintiff's allegations did not satisfy the FLSA's definition of "commerce."  As we've explained, that's not the case here.  As a result, we conclude that Plaintiffs showed enough on summary judgment to satisfy the FLSA's individual-coverage requirement.

## IV.    CONCLUSION

For the reasons we have explained, we reverse the district court's summary-judgment ruling.  And we vacate the district court's order denying reconsideration because it rested on the same incorrect legal standard as the summary-judgment order.  We remand to the district court for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED IN PART; VACATED IN PART.**